UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No.  07 CR 784 |
| | ) | |
| v. | ) | Hon. Charles P. Kocoras |
| | ) | United States District Court Judge |
| DILSHOD UMAROV | ) | |
| | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by and through its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, hereby submits this sentencing memorandum as to defendant Dilshod Umarov.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 1999, defendant Umarov applied for and received a United States F1 student non-immigrant visa to enter the United States for purposes of studying at the San Francisco Institute of English.  Umarov indicated on his visa application that he was born in Uzbekistan on February 7, 1977 and that he had an Uzbekistan passport for travel.

Umarov entered the United States on November 26, 1999 using his Uzbekistan-issued passport and his U.S. student visa.  Despite his claims on the visa application, Umarov did not attend or complete his course of study and as such, became an out-of-status alien as of approximately February 25, 2000.

With the exception of leisure travel, Umarov has remained in the United States through the present time in spite of his alien status.  His stay – and more importantly his

ability to return to the United States – has been facilitated by his possession of the fraudulently obtained passport.  Specifically, on October 4, 2006, Umarov submitted a DSP-11 application for a U.S. passport at a passport office in Chicago, Illinois.  In completing the form, Umarov indicated that (1) he was a United States citizen; (2) his place of birth was Roseville, Michigan; and (3) his mother and father were U.S citizens.  As proof of citizenship, Umarov presented the processing agent with a fraudulent birth certificate that indicated Umarov was born in Roseville, Michigan on February 7, 1977.  In fact, Umarov and his parents are natives and citizens of Uzbekistan with no legal claim to United States citizenship.  Nonetheless, in reliance on the statements contained in the application, the United States Department of States issued United States Passport No. 029013517 to Umarov on October 6, 2006.

Since the issuance of the passport, Umarov has used it as proof of citizenship for re-entry into the United States on at least two occasions.  The first was on January 28, 2007, when he presented the passport at O'Hare International airport to secure re-entry from Istanbul, Turkey.  The second instance was on December 1, 2007, when Umarov presented the passport at O'Hare to secure re-entry following an October 2007 trip to Bishek, Kyrgyzstan. On this occasion, Umarov was confronted with information concerning his true citizenship by Customs and Border Patrol agents and he persisted in his claim that he was born in Roseville, Michigan.  The passport was seized[1] and Umarov was arrested pursuant to the complaint and arrest warrant previously issued in this case.

---

[1]     The United States Department of State has since revoked the passport.

On January 10, 2008, Umarov was charged by way of indictment with one count of willfully and knowingly making a false statement in an application for a passport with intent to induce and secure the issuance of a passport under the authority of the United States, in violation of Title 18, United States Code, Section 1542.  On March 20, 2008, Umarov pled guilty to this charge pursuant to a written plea agreement.

## A WITHIN GUIDELINE SENTENCE IS APPROPRIATE IN THIS CASE

Pursuant to the terms of the plea agreement, the government seeks a sentence within the applicable guideline range of 10 to 16 months' imprisonment.  This Court should give serious consideration to the advisory Guidelines range in order to minimize unwarranted sentencing disparities.  The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." 543 U.S. 220, 264-65 (2005); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.").

It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007), and that there is broad sentencing discretion post-*Booker. United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006).  In *Demaree*, the Seventh Circuit held that there is no ex post facto violation where the district court consults an advisory Guidelines range that is higher than the range that would have applied at the time of the offense conduct.  Id. at 795.  The court in *Demaree*

explained that the advisory nature of the Guidelines system is such that post-offense changes to the Guidelines do not so substantially disadvantage the defendant that the changes have an ex post facto effect. Id. at 794-95. However, the opinion in *Demaree* did not, of course, purport to undermine the Booker remedial opinion's holding that it was creating an advisory system in order to effectuate Congress's fundamental goal of moving away from sentencing disparity. 543 U.S. at 263-65. Nor did the *Demaree* opinion undermine the principle that the farther the sentencing judge deviates from the advisory range, the more compelling the justification must be. *Dean*, 414 F.3d at 729; *United States v. Wallace*, 458 F.3d 606, 609 (7th Cir. 2006); *United States v. Wachowiak*, 496 F.3d 744 (7th Cir. 2007).

Indeed, the opinion in *Demaree* refers to the other reason, aside from the goal of minimizing sentencing disparity, why the advisory Guidelines range should be given serious consideration in the sentencing process: the Sentencing Commission is an "expert in criminal punishments," so much so that its rationale "is entitled to the serious consideration of the sentencing judge." 459 F.3d at 795. Although there is no presumption that the Guidelines sentence is the correct sentence, it remains true after *Rita* that "the Sentencing Commission sets and adjusts the guidelines ranges with the specific objective of achieving proportionality in sentencing for crimes of differing severity." *Rita*, 127 S.Ct. at 2464.

Finally, deviations from the Guidelines range are also more likely to be unreasonable if the grounds for the deviation are "overstated mitigating factors," "normal incidents" of the offense, or simple "disagreement with the culpability assumptions built into the guidelines." *Wachowiak*, 496 F.3d 754. The Seventh Circuit has repeatedly admonished that "factors that

are common to offenders with like crimes" are less likely to be substantively reasonable, and that "particularized" factors are needed to justify non-guidelines sentences.  Id. at 750.

As the government will explain at the sentencing hearing, a sentence within the advisory range is appropriate in this case because the § 3553(a) factors weigh in favor of such a sentence.  A sentence within the range will reflect the seriousness of the crime to which Umarov has plead guilty; will sufficiently account for Umarov's criminal history, which falls into a category III;[2] will avoid unwanted sentencing disparities; will serve as just punishment; and will serve as an adequate deterrent to such conduct by Umarov and others in the future.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:    /s/   Lindsay C. Jenkins
LINDSAY C. JENKINS
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
Dated: March 25, 2008                (312) 353-0962

---

[2]     As detailed in the plea agreement, Umarov's criminal history points equal 4 and his criminal history category is III:  (1) On or about July 27, 2004, defendant was convicted of retail theft, a misdemeanor, in the Circuit Court of Cook County, in Case No. 04-200276301, and sentenced to 18 months of court supervision and community service.  Pursuant to Guideline §4A1.1(c) and 4A1.2(c)(1), one criminal history point applies to this sentence; (2) On or about January 10, 2006, defendant was convicted of forgery in the Circuit Court of Cook County, in Case No. 05C22060401, and sentenced to two years probation.  Pursuant to Guideline §4A1.1(c), one criminal history point applies to this sentence; (3) Defendant committed the instant offense while under a criminal justice sentence of probation, namely the sentence imposed in the January 10, 2006 conviction for forgery described in Paragraphs 10(c)(ii) described above.  Pursuant to Guideline §4A1.1(d), two additional criminal history points apply.

## <u>CERTIFICATE OF SERVICE</u>

Lindsay C. Jenkins, an Assistant United States Attorney assigned to the instant matter, hereby certifies that the attached **GOVERNMENT'S SENTENCING MEMORANDUM** was served on March 25, 2008, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

By:    /s/   *Lindsay C. Jenkins*
       LINDSAY C. JENKINS
       Assistant United States Attorney
       219 South Dearborn Street
       5th Floor
       Chicago, Illinois 60604
       (312) 353-0962